# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEHZAD RAJABI, | CASE NO. 1:11-cv-00090-OWW-SKO |
| Plaintiff, | **ORDER ON PLAINTIFF'S COMPLAINT** |
| v. | |
| PSA AIRLINES, INC., et al., | |
| Defendants. | |

## I. INTRODUCTION AND FACTUAL BACKGROUND

On January 19, 2011, Plaintiff Behzad Rajabi ("Plaintiff") filed a complaint against Defendants PSA Airlines, Inc. ("PSA"), Jeff Gilliam, Darren Harris, Matthew Christner, Randall Fusi, Joseph Rose, Bruce Kumke, and Jason Kyle (collectively "Defendants"). Plaintiff, an Iranian-born United States citizen, was a pilot employed by PSA from April 2004 to April 2008. (Doc. 1, ¶¶ 1, 9, 12.) Plaintiff asserts that he was employed by PSA as a First Officer, i.e., "one of two pilots assigned to operate the planes on which [Plaintiff] flew." (Doc. 1, ¶ 14.) During the course of his employment, Plaintiff flew over 3200 hours as a First Officer on two different aircraft. (*Id.*) Plaintiff received excellent oral performance evaluations and was repeatedly praised by his managers for his safe and efficient work as a pilot. (*Id.*)

In September 2007, Plaintiff applied for a promotion from the position of First Officer to Captain. (Doc. 1, ¶ 15.) In considering Plaintiff's application for this promotion, PSA was required to follow published Federal Aviation Administration ("FAA") regulations that set forth procedures for evaluating applicants seeking promotion. (Doc. 1, ¶ 17.) These procedures required pilot-applicants to submit to "checkrides," which Plaintiff asserts is a simulated ride on one of U.S. Airways' aircraft simulators.[1] Therefore, Plaintiff was required to submit to checkrides as part of a promotion evaluation.

The first of these checkrides took place in September 2007, without Plaintiff's prior knowledge. (Doc. 1, ¶ 19.) Plaintiff asserts that PSA and its Aircrew Program Designee, Jeffrey Gilliam, subjected Plaintiff to a checkride without informing him of this or preparing him for the ckeckride. (*Id.*) Plaintiff understood that the session was to be an additional simulator session before his checkride, not the official checkride. Mr. Gilliam failed Plaintiff on this checkride. Plaintiff asserts this is because Defendants did not want "foreign born pilots, especially those with strong accents, acting as Captains of their planes." (*Id.*)

In October 2007, Plaintiff completed a checkride for a First Officer position and successfully passed. (Doc. 1, ¶ 21.) Plaintiff continued his employment with PSA as a First Officer, but he was subsequently subjected to more "line checks" than other pilots. (*Id.*) On one occasion, as part of these line checks, the "check airman" pulled a circuit breaker on a revenue flight (a flight with paying passengers) in a test of Plaintiff's skills, which is against FAA policy. (*Id.*)

In March 2008, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging he had been subjected to discriminatory treatment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") due to his national origin, including his thick accent. (Doc. 1, ¶ 22.) Also in March 2008, Plaintiff made a second attempt to qualify for a promotion to Captain. As part of the promotion requirements, he was subject to a "ground school oral exam," but the topic was changed by the instructor at the last minute. Plaintiff asserts that, per the collective bargaining agreement in place, he should have been provided seven days notice of this

---

[1] Plaintiff alleges that Defendant PSA is a Pennsylvania corporation and a wholly owned subsidiary of US Airways Group. (Doc. 1, ¶ 2.)

2

change. (Doc. 1, ¶ 23.)  Additionally, PSA did not provide him with an outline of the required maneuvers for the checkride associated with the promotion evaluation, and he was required to complete multiple malfunctions at one time instead of one malfunction at a time. (Doc. 1, ¶ 23.)

On April 6, 2008, Plaintiff underwent a second checkride in an attempt to qualify for a promotion. (Doc. 1, ¶ 24.) Plaintiff asserts this checkride was unfair and designed to make him fail. Further, the correct forms for the checkride were not signed, invalidating the checkride. (*Id.*) On April 10, 2008, Plaintiff underwent a third checkride. (Doc. 1, ¶ 26.)  During this checkride, Plaintiff's instructor informed him that he "heard that Plaintiff had filed an EEOC complaint" and had he "known this he would not have approved Plaintiff's readiness for the checkride." (Doc. 1, ¶ 26.) Despite the instructor's misgivings about Plaintiff's EEOC complaint, the checkride went forward.  However, the instructor subjected Plaintiff to a 2.9 hour checkride without a break, Plaintiff was asked to perform tasks for which he had not been trained, and Plaintiff was held to a different standard than other trainees. Plaintiff also states that PSA "failed to provide a First Officer for the checkride whose name appears on the Pilot's System Seniority List." (*Id.*) Subsequently, on April 12, 2008, Plaintiff 's employment with PSA was terminated. (Doc. 1, ¶ 27.)  Thereafter, Plaintiff initiated this suit alleging violations of Title VII, the California Fair Employment and Housing Act ("FEHA"), and a claim for intentional infliction of emotional distress.

## II.   DISCUSSION

**A.     Screening Standard**

"Notwithstanding any filing fee, or any portion thereof, that may have been paid," the court shall dismiss a case at any time if it determines that the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). If the Court determines that the complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

**B.      Failure to State a Claim**

In determining whether a complaint fails to state a claim, the Court applies the same pleading standard used under Federal Rule of Civil Procedure 8(a).  Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (quoting *Twombly*, 550 U.S. at 555).

**C.      Violation of the California Fair Employment and Housing Act**

Plaintiff's first claim for relief sets forth a cause of action against Defendant PSA for violation of FEHA, pursuant to California Government Code § 12940.  However, this claim is subject to administrative exhaustion requirements.  *Okoli v. Lockheed Technical Operations Co.*, 36 Cal. App. 4th 1607, 1613 (1995).  Under FEHA, a plaintiff must file a complaint with the Department of Fair Employment and Housing ("DFEH") prior to filing a complaint in a court.  *Id.*  Although Plaintiff has submitted evidence that he filed a claim with the EEOC relating to his Title VII claim, discussed *infra*, there is no indication that he has filed a complaint with DFEH for purposes of his FEHA claim.  To proceed with a FEHA claim, Plaintiff must plead that he has exhausted his administrative remedies by filing a complaint with DFEH and that any suit in this Court is timely filed with reference to the DFEH complaint.

**D.      Violation of Title VII of the Civil Rights Act of 1964**

   **1.      Exhaustion of Administrative Remedies**

Plaintiff's second cause of action sets forth a claim against Defendant PSA for wrongful termination and harassment in violation of Title VII, codified at 42 U.S.C. § 2000e, *et seq*. "To establish federal subject matter jurisdiction, a plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a Title VII claim [in the courts]." *Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir. 2002). This requires that the complainant file a timely charge with the EEOC, allowing the agency time to investigate the charge. 42 U.S.C. § 2000e-5(b). "Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *Id.* at 1104 (quoting *Green v. L.A. Cnty. Superintendent of Sch.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989)).

Here, Plaintiff has alleged that he filed a charge with the EEOC and received a Right to Sue notice less than 90 days prior to filing this complaint. The Right to Sue notice issued by the EEOC is attached to Plaintiff's complaint. Thus, Plaintiff has adequately alleged that he has exhausted his administrative remedies with respect to his Title VII claim.

   **2.      Cognizable Claims Under Title VII**

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, term, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). A person is discriminated against when he or she is singled out and treated less favorably than others similarly situated on account of race. *Jauregui v. City of Glendale*, 852 F.2d 1128, 1134 (9th Cir. 1988). Pursuant to *McDonnell Douglas Corp. v. Green* (*"McDonnell Douglas"*), 411 U.S. 792 (1973), a Plaintiff in a Title VII action must show that "(1) he belongs to a protected class, (2) he was qualified for the position, (3) he was subjected to an adverse employment action, and (4) similarly situated individuals [not of his protected class] were treated more favorably." *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 658 (9th Cir. 2002). Being terminated from one's position "certainly constitutes an adverse employment action." *Id.* at 660. Plaintiff has no obligation to prove the four-part *McDonnell Douglas* elements

5

set forth above at the pleading stage. Rather, Plaintiff is required to set forth facts that state a facially plausible Title VII claim that gives fair notice to the opposing party of the nature of the claim so that the party can effectively defend against it. *Twombly*, 550 U.S. at 569-70; *Starr v. Baca*, __ F.3d __, slip op., 2011 WL 477094, at *13-14 (9th Cir. Feb. 11, 2011).[2]

Plaintiff alleges that the discrimination he suffered was due to his national origin as a U.S. citizen of Iranian descent. Thus, Plaintiff asserts that he is a member of a protected class. (Doc. 1, ¶¶ 9, 19, 22.) Plaintiff asserts that he was qualified for the position of Captain for which he applied, but that he was denied the promotion due to unfair testing and assessment procedures designed to eliminate his potential for promotion. (Doc. 1, ¶¶ 19-27.) Plaintiff also avers that other similarly situated individuals were treated more favorably. (Doc. 1, ¶ 23 ("Plaintiff was required to perform more simulator tasks than required of other trainees."); ¶ 26 ("Plaintiff was asked to perform more tasks for which he had not been trained and held to a different standard than other trainees."); ¶ 30 ("Defendant PSA has treated Plaintiff unfairly by giving Plaintiff less hours to practice before a checkride than other employees.").) Moreover, Plaintiff contends that he suffered adverse employment actions in that he was denied promotion on the basis of his national origin, and he was ultimately terminated from his employment with PSA. (Doc. 1, ¶¶ 27.)

Plaintiff also contends that PSA retaliated against him for reporting his grievance to the EEOC. (Doc. 1, ¶¶ 26, 29.) Plaintiff asserts that during his April 10, 2008, checkride, his instructor

---

[2] In *Starr v. Baca*, 2011 WL 477094, at *13-14, the Ninth Circuit contrasted the differences in the pleading standards applied in several United States Supreme Court cases including *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), *Twombly*, 550 U.S. 544, and *Iqbal*, 129 S. Ct. 1937. In *Swierkiewicz*, the Supreme Court held that the four-part *McDonnell Douglas* standard was an evidentiary standard, not a pleading requirement. *Swierkiewicz*, 534 U.S. at 510. Thus, a claimant asserting a Title VII claim is not necessarily required to allege all of the *McDonnell Douglas* elements. *Id*. at 510-12. Following *Swierkiewicz*, the Supreme Court decided *Iqbal* and *Twombly* which appear to apply a higher pleading standard than that applied in *Swierkiewicz*. In contrasting these cases, the Ninth Circuit concluded that:

> whatever the difference between these cases, we can at least state the following two principles common to them all. First, allegations in a complaint or counterclaim must be sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it. Second, the allegations must be sufficiently plausible that it is not unfair to require the opposing party to be subjected to the expense of discovery.

*Starr*, 2011 WL 477094, at *14. Thus, the *McDonnell Douglas* standard is only utilized for general guidance as to pleading a claim under Title VII. This Court has applied the two principles identified by the Ninth Circuit in *Starr* to analyze the sufficiency of the allegations.

6

stated that he had heard that Plaintiff had filed an EEOC complaint and was documenting and gathering information on the company. (Doc. 1, ¶ 26.) The instructor informed Plaintiff that, if the instructor had known this previously, he would not have approved Plaintiff's readiness for the checkride. (*Id.*) Plaintiff alleges that, after making this statement, the instructor subjected him to a 2.9 hour checkride without a break, required him to perform tasks for which Plaintiff was not trained, and held Plaintiff to a higher standard than other trainees. The instructor also failed to provide a First Officer for the checkride whose name is on the Pilot's System Seniority List. (*Id.*) Plaintiff avers that this created a hostile work environment during this checkride. (*Id.*) Plaintiff also asserts that his employment was terminated following his complaint with the EEOC. (Doc. 1, ¶ 27.) These are sufficient factual allegations to support a reasonable inference that PSA retaliated against Plaintiff due to the March 2008 complaint Plaintiff filed with the EEOC.

The Court finds that, on its face, Plaintiff's complaint states cognizable claims under Title VII for wrongful termination, discrimination, harassment, and retaliation in violation of Title VII.[3]

**E.    Intentional Infliction of Emotional Distress**

Plaintiff's third cause of action sets forth a claim for intentional infliction of emotional distress ("IIED") against PSA for the conduct of its agents Gilliam, Harris, Christner, Kumke, Fusi, Rose, and Kyle through the doctrine of respondeat superior. (Doc. 1, ¶¶ 52-58.)

To state a claim for intentional infliction of emotional distress, a claimant must allege the following elements: (1) extreme or outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress; (2) suffering of severe emotional distress by the plaintiff; and (3) the plaintiff's emotional distress is actually and proximately the result of the defendant's outrageous conduct. *Agarwal v. Johnson*, 25 Cal. 3d 932, 946 (1978), *overruled on other grounds in White v. Ultrimar*, 21 Cal. 4th 563, 574 n.4 (1999). To be "outrageous," the conduct must be "so extreme as to exceed all bounds of that usually tolerated

---

[3] The Court has no information regarding the scope of Plaintiff's EEOC charges and cannot determine whether Plaintiff's Title VII claims are all sufficiently like or reasonably related to claims he stated in his charge to the EEOC. *See Sosa v Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990) (incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge) (internal quotation marks omitted).

in a civilized community." *Cervantez v. J.C. Penny Co.*, 24 Cal. 3d 579, 593 (1979), *superseded by statute as stated in Melendez v. City of L.A.*, 63 Cal. App. 4th 1, 6-8 (1998).

### 1. IIED Claim Against Defendants Harris, Christner, Kumke, Fusi, Rose, and Kyle

Although Plaintiff asserts that outrageous acts were committed by Harris, Christner, Kumke, Fusi, Rose, and Kyle, there are no allegations in the complaint regarding any conduct of these individuals. Further, because Plaintiff states that "Defendant PSA is liable to Plaintiff for the acts committed by its agents," it appears that Plaintiff does not intend to state IIED claims against any defendant other than PSA. To the extent that Plaintiff is attempting to state IIED claims against Harris, Chirstner, Kumke, Fusi, Rose, and Kyle, there are no allegations regarding their specific conduct.

### 2. IIED claims Against Defendants PSA and Gilliam

With regard to Defendant Gilliam, Plaintiff asserts that Gilliam wrongfully failed him on a checkride in September 2007. (Doc. 1, ¶ 19.) Plaintiff contends that, prior to the checkride, Gilliam had asked Plaintiff where he was from, stated that Plaintiff had a strong accent despite being in the U.S. for so long, and Gilliam initiated a conversation with Plaintiff about the hostage crisis in Iran. (*Id.*) It is unclear whether Plaintiff intends to state an individual claim against Gilliam or whether Plaintiff intends only to state a claim against PSA under a theory of respondeat superior. In any event, there are insufficient facts alleged to adequately set forth the necessary outrageous conduct required of an IIED claim with regard to either Gilliam or PSA. Plaintiff must provide additional facts showing that Gilliams' conduct toward Plaintiff was outrageous. *Cervantez*, 24 Cal. 3d at 593 (conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community").

Further, while Plaintiff asserts that he has suffered emotional distress, there are no facts alleged that indicate the nature or extent of the emotional distress suffered. *Bogard v. Emp'rs Cas. Co.*, 164 Cal. App. 3d 602, 617 (1985); *Hamilton v. Prudential Fin.*, No. 2:07-cv-00944-MCE-DAD, 2007 WL 2827792, at *4 (E.D. Cal. Sept. 27, 2007). The allegation that Plaintiff suffered emotional distress is a legal conclusion and amounts to a bare recitation of an element of the claim – which is not sufficient. *Twombly*, 550 U.S. at 555. Plaintiff must plead additional facts showing the nature

and extent of his distress. *Bogard*, 164 Cal. App. 3d at 617. Therefore, there is no cognizable claim for intentional infliction of emotional distress against PSA or Gilliam.

### III. CONCLUSION

As stated above, Plaintiff's complaint states cognizable Title VII claims against PSA. However, Plaintiff's allegations do not support cognizable claims under FEHA or for intentional infliction of emotional distress. The Court will provide Plaintiff with an opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. *Lopez*, 160 F.3d at 1130.

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding with only his Title VII claims against PSA, Plaintiff shall notify the Court. Plaintiff will then be provided with one summons to be served on PSA with the complaint and a copy of this order.[4]

If Plaintiff elects to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Although Plaintiff's factual allegations will be accepted as true and "the pleading standard Rule 8 announces does not require detailed factual allegations, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Plaintiff is cautioned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *King*, 814 F.2d at 567 (citing *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981)); *accord. Forsyth*, 114 F.3d at 1474. In other words, even claims that were properly stated in the original complaint must be completely stated again in the amended complaint.

---

[4] Federal Rule of Civil Procedure 4 provides the requirements for service of process. Plaintiff should review Rule 4 and comply with its requirements for any service attempted on PSA. Plaintiff may also request that PSA waive service of process under Rule 4(d) in the manner required by Rule 4(d).

9

If Plaintiff chooses to amend, and the amended complaint again fails to state cognizable claims under FEHA or for intentional infliction of emotional distress, the Court will recommend that these claims be dismissed with prejudice for failure to state a claim upon which relief can be granted.

Based on the foregoing, it is HEREBY ORDERED that:

1. Within **thirty (30) days** from the date of service of this order, Plaintiff must **either**:

    a. File an amended complaint curing the deficiencies identified by the Court in this order, **or**

    b. Notify the Court in writing that he does not wish to file an amended complaint and is willing to proceed only against PSA for violations of Title VII; and

2. If Plaintiff fails to comply with this order, the Court will recommend that the action be dismissed for failure to obey a court order.

IT IS SO ORDERED.

**Dated:   April 5, 2011**                             /s/ Sheila K. Oberto
                                          UNITED STATES MAGISTRATE JUDGE